## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY;
WESTERN WATERSHEDS PROJECT,

                      Plaintiffs,

v.

DAVID BERNHARDT, Secretary of the
Interior, in his official capacity; WILLIAM
PENDLEY, Deputy Director, Bureau of Land
Management, in his official capacity; and
MARGARET EVERSON, National Park
Service, in her official capacity,

                      Defendants.

Civil Action No. 1:20-cv-1224-TSC

## **DEFENDANTS' MOTION TO DISMISS**

For the reasons explained in the accompanying memorandum of law, Defendants respectfully move to dismiss all claims raised in Plaintiffs' second supplemental complaint.  *See* Fed. R. Civ. P. 12(b)(1).

Dated: September 14, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
*Assistant Attorney General*
Environment & Natural Resources Division
*Acting Assistant Attorney General*
Civil Division

CHRISTOPHER R. HALL
*Assistant Branch Director*

/s/ *Michael Drezner*
MICHAEL DREZNER (VA Bar No. 83836)
BRADLEY CRAIGMYLE
*Trial Attorneys*
U.S. Department of Justice

Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 415-4505
Facsimile: (202) 616-8460
Email: Michael.L.Drezner@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY; WESTERN WATERSHEDS PROJECT, | |
| Plaintiffs, | Civil Action No. 1:20-cv-1224-TSC |
| v. | |
| DAVID BERNHARDT, Secretary of the Interior, in his official capacity; WILLIAM PENDLEY, Deputy Director, Bureau of Land Management, in his official capacity; and MARGARET EVERSON, National Park Service, in her official capacity, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS SECOND SUPPLEMENTAL COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

STANDARD OF REVIEW ........................................................................................................ 3

ARGUMENT .............................................................................................................................. 4

I.      Plaintiffs Lack Organizational Standing to Sue on Their Own Behalf ............................ 4

        A.      Plaintiffs Do Not Allege Harm to Their Services or Operations ........................... 5

        B.      Plaintiffs Do Not Allege Any Diversion of Resources ......................................... 7

II.     Plaintiffs Lack Standing to Sue on Behalf of Their Members ........................................ 8

        A.      Plaintiffs May Not Sue on Behalf of "Supporters" or Other Non-Members ......... 9

        B.      Plaintiffs Fail to Identify a Single Injured Member ............................................. 10

        C.      The Claimed Injuries to Plaintiffs' Unidentified Members Are Vague and
                Speculative .......................................................................................................... 11

III.    Plaintiffs Raise Only a Generalized Grievance .............................................................. 14

CONCLUSION .......................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*,
 469 F.3d 129 (D.C. Cir. 2006) ..................................................... 5

*Allen v. Wright*,
 468 U.S. 737 (1984), *abrogated on other grounds by*
 *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).......................... 14

*Am. Legal Found. v. FCC*,
 808 F.2d 84 (D.C. Cir. 1987) ..................................................... 9

*Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*,
 659 F.3d 13 (D.C. Cir. 2011) ..................................................... 4

*Arpaio v. Obama*,
 797 F.3d 11 (D.C. Cir. 2015) ..................................................... 11

*Byrne v. Clinton*,
 410 F. Supp. 3d 109 (D.D.C. 2019), *aff'd sub nom.*
 *Byrne v. Brock*, No. 19-7120, 2020 WL 1487757 (D.C. Cir. Feb. 27, 2020) ........................... 7

*Chamber of Commerce v. EPA*,
 642 F.3d 192 (D.C. Cir. 2011) ..................................................... 10

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ..................................................... 12

*Conservative Baptist Ass'n of Am., Inc. v. Shinseki*,
 42 F. Supp. 3d 125 (D.D.C. 2014) ..................................................... 10

*Ctr. for Biological Diversity v. DOI*,
 563 F.3d 466 (D.C. Cir. 2009) ..................................................... 13

*Ctr. for Responsible Sci. v. Hahn*,
 809 F. App'x 10 (D.C. Cir. 2020) ..................................................... 7

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006) ..................................................... 4

*Equal Rights Ctr. v. Post Props., Inc.*,
 633 F.3d 1136 (D.C. Cir. 2011) ..................................................... 4, 5

*Erby v. United States*,
  424 F. Supp. 2d 180 (D.D.C. 2006) ........................................................ 4

*FEC v. Akins*,
  524 U.S. 11 (1998) .......................................................................... 5-6

*Firearms Policy Coal., Inc. v. Barr*,
  419 F. Supp. 3d 118 (D.D.C. 2019) ............................................... 8, 11, 14

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ........................................................... 5, 8

*Freedom Watch, Inc. v. McAleenan*,
  442 F. Supp. 3d 180 (D.D.C. 2020) ...................................................... 11

*Friends of Animals v. Jewell*,
  115 F. Supp. 3d 107 (D.D.C. 2015) ...................................................... 14

*Fund Democracy, LLC v. SEC*,
  278 F.3d 21 (D.C. Cir. 2002) ........................................................... 9, 10

*Int'l Acad. of Oral Med. & Toxicology v. USDA*,
  195 F. Supp. 3d 243 (D.D.C. 2016) ........................................................ 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................. 4, 6, 14

*Nat'l Ass'n of Home Builders v. EPA*,
  667 F.3d 6 (D.C. Cir. 2011) .............................................................. 10

*PETA v. USDA*,
  797 F.3d 1087 (D.C. Cir. 2015) ........................................................... 4

*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002) ............................................................ 9

*Sierra Club v. EPA*,
  754 F.3d 995 (D.C. Cir. 2014) ........................................................... 13

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ...................................................................... 6

*Stand Up for California! v. DOI*,
  298 F. Supp. 3d 136 (D.D.C. 2018) ....................................................... 1

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................ 10

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ............................................................................................ 12

*Turlock Irr. Dist. v. FERC*,
   786 F.3d 18 (D.C. Cir. 2015) ........................................................................ 8, 12

*United Presbyterian Church in U.S.A. v. Reagan*,
   738 F.2d 1375 (D.C. Cir. 1984) .......................................................................... 12

*United Transp. Union v. ICC*,
   891 F.2d 908 (D.C. Cir. 1989) ........................................................................... 11

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ............................................................................................. 6

*Williams v. Lew*,
   819 F.3d 466 (D.C. Cir. 2016) .......................................................................... 13

**STATUTES**

5 U.S.C. § 702 ........................................................................................................... 1

5 U.S.C. §§ 3345 *et seq.* ........................................................................................... 1

43 U.S.C. §§ 1701 *et seq.* .......................................................................................... 1

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(1) .......................................................... 3-4, 15

## <u>INTRODUCTION</u>

Plaintiffs, two non-profit organizations, challenge the ability of the Secretary of the United States Department of the Interior to delegate certain duties within the agency he leads. In doing so, Plaintiffs—Public Employees for Environmental Responsibility ("PEER") and Western Watersheds Project ("WWP")—identify no discrete action taken by the officials to whom the Secretary has delegated those duties; rather, they challenge only the delegation orders themselves. But Plaintiffs lack the appropriate vehicle through which to bring that broad challenge. Most obviously, they have failed to even plead the sort of injury-in-fact required to demonstrate their Article III standing. The Court should thus dismiss Plaintiffs' claims for lack of jurisdiction.

Plaintiffs' complaint here constitutes a standalone challenge to internal Department of Interior documents that delegate the authority of the Directors of the Bureau of Land Management ("BLM") and the National Park Service ("NPS") to officials within those components. "[I]n practice, there are very few duties that cannot be delegated to . . . another official who acts in the place of the principal pursuant to agency regulations or orders," *Stand Up for California! v. DOI*, 298 F. Supp. 3d 136, 137 (D.D.C. 2018), yet Plaintiffs nonetheless contend that the provision of certain authority to Defendants here was unlawful under the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. §§ 3345 *et seq.*, the Administrative Procedure Act, 5 U.S.C. § 702, and the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.* Having not challenged any discrete action, Plaintiffs seek an order declaring the delegation orders unlawful and an injunction prohibiting Defendants from taking any future action. *See* Second Suppl. Compl. for Declaratory and Inj. Relief ("SSC"), Prayer for Relief (A), (B), (E), ECF No. 11.

1

The problem for Plaintiffs is that they fail to meet the first and most basic requirement of standing: demonstrating an injury-in-fact.  Plaintiffs PEER and WWP are nonprofit organizations whose missions broadly concern the management and use of public lands in the United States. Though both Plaintiffs appear to claim standing on their own behalf and that of their members, they establish neither.

As to Plaintiffs' asserted organizational standing to bring suit to vindicate their own interests, each fails to demonstrate that it has suffered a sufficient injury.  Specifically, neither Plaintiff even raises allegations concerning the two key components of organizational injury-in-fact, a showing: (1) that Defendants' actions have impaired their groups' operations or services, and (2) that Plaintiffs have devoted resources to counteract that harm.  As a consequence, each has failed to carry the necessary burden to demonstrate organizational standing.

The same holds true as to Plaintiffs' associational standing to bring suit on behalf of their members.  To establish associational standing, Plaintiffs at the very least must identify one or more members who would have standing to sue in their own right.  Yet neither Plaintiff points to any such member.  Moreover, the few potential harms mentioned with regard to Plaintiffs' unnamed members are either speculative—such as a possible future employment transfer or re-assignment—or impermissibly vague and abstract—such as unexplained "impacts" on their members from unspecified actions of Defendants.

Without Article III standing to bring their claims before this Court, jurisdiction is lacking and the suit should be dismissed.

## **BACKGROUND**

While Plaintiffs lack standing to bring any of the claims in their Complaint, Defendant briefly sets forth, according to the allegations of the operative Complaint, the factual context for

Plaintiffs' argument that certain Defendants are improperly exercising authority.

Concerning the Bureau of Land Management ("BLM"), Defendant William Perry Pendley is the Deputy Director, Policy and Planning, of the BLM, *see* SSC ¶ 8, and the office of the BLM Director is vacant. *See id.* ¶¶ 19, 22. Accordingly, in July 2019, the Secretary of the Interior delegated to Defendant Pendley the delegable duties of the BLM Director. *Id.* ¶ 20. Before the Secretary's delegation order expired on its own terms, the Secretary redelegated the authority to Pendley. *See, e.g.*, *id.* ¶¶ 19, 34. The Secretary's latest redelegation order expired on June 5, 2020. *Id.* ¶ 34. As a result, Defendant Pendley is currently exercising the delegable duties of the BLM Director under a BLM succession order. *See id.* ¶ 23.

Regarding the National Park Service ("NPS"), the office of NPS Director is similarly vacant. *See id.* ¶¶ 22, 25. As a consequence, in August 2020, the Secretary of the Interior delegated to Defendant Everson the delegable duties of the NPS Director. *See id.* Defendant Everson is currently exercising the delegable duties of the NPS Director under the Secretary's delegation order. *See id.*[1]

Plaintiffs broadly challenge (1) the Secretary's redelegation orders that allowed Defendant Pendley to exercise the delegable duties of the BLM Director in the past, (2) the agency's succession order that Defendant Pendley is currently exercising the delegable duties of the BLM Director under, and (3) the Secretary's order that Defendant Everson is currently exercising the delegable duties of the NPS Director under. *See id.* ¶¶ 38–41, 43–46.

## **STANDARD OF REVIEW**

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction under

---

[1] The Second Supplemental Complaint includes several allegations about former Defendant David Vela. *See, e.g.*, SSC ¶¶ 1 n.1, 19, 21, 22, 23, 36, 39, 41, 43. Because Mr. Vela is no longer a Defendant, these allegation are irrelevant.

Federal Rule of Civil Procedure 12(b)(1).  Plaintiffs bear the burden of demonstrating jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted).  Defendants here make a facial challenge to jurisdiction, as, even assuming the allegations in the Amended Complaint were true, they would be insufficient to establish Article III standing for Plaintiff's claims.  *See, e.g.*, *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006).

## ARGUMENT

To establish Article III standing, Plaintiffs must demonstrate: (1) an "actual or imminent," "concrete and particularized" injury in fact, (2) a "causal connection between the injury" and the challenged action, and (3) a likelihood that the "injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 560-61 (citation omitted).  As organizations, Plaintiffs appear to assert standing on both their own behalf and that of their members.  SSC ¶¶ 30-33; *see also Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011).  However, neither Plaintiff even pleads allegations that would support either theory of standing.

## I.      Plaintiffs Lack Organizational Standing to Sue on Their Own Behalf

First, as to Plaintiffs' claim of standing on the basis of alleged injury to their own organizational interests, they fail to allege an actual injury-in-fact affecting their groups.  The D.C. Circuit applies a two-part test for determining whether an organization's injury suffices to bring suit under Article III.  *See PETA v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015).  First, the court asks "whether the defendant's allegedly unlawful activities injured the plaintiff's interest in promoting its mission."  *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011).  If so, the court proceeds to consider whether the

organization has "diver[ted] [its] resources . . . to counteract" the challenged conduct.  *Equal Rights Center*, 633 F.3d at 1140.  Plaintiffs fail to satisfy both of these requirements.

### A.       Plaintiffs Do Not Allege Harm to Their Services or Operations

To satisfy the first prong—"an injury to its interest"—"an organization must allege that the defendant's conduct perceptibly impaired the organization's ability to provide services." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015).  Perceptible impairment occurs when the challenged conduct causes an actual "inhibition of [the organization's] daily operations."  *Id*. (citation omitted).  "The [D.C. Circuit] has distinguished between organizations that allege that their activities have been impeded from those that merely allege that their mission has been compromised[,]" requiring a showing of actual impediment. *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006).  Thus, it is not enough for the organization to show merely that its "mission has been compromised," *Food & Water Watch*, 808 F.3d at 919 (citation omitted), or that it has experienced a "'setback' to its 'abstract social interests,'" *Equal Rights Ctr.*, 633 F.3d at 1138 (citation omitted).

As best Defendants can discern, Plaintiffs offer only two vague bases for their organizational standing: harm to their general social interests and other unspecified "impacts." Neither allegation suffices to show organizational injury.

As to their interests, Plaintiffs assert that both PEER and WWP are harmed because they have "a strong interest in ensuring that its member BLM and NPS employees serve under a properly Senate-confirmed or otherwise FVRA-compliant Director."  SSC ¶ 30; *see also id.* ¶ 32 (similar allegations).  But an abstract interest in ensuring the law is followed does not by itself confer standing.  *See FEC v. Akins*, 524 U.S. 11, 24 (1998) ("The abstract nature of the harm—

5

for example, injury to the interest in seeing that the law is obeyed—deprives the case of the concrete specificity" required for standing "prevents a plaintiff from obtaining what would, in effect, amount to an advisory opinion.").  Rather, a plaintiff must show a concrete and particularized injury and neither PEER nor WWP makes any such allegation.

In a similar vein, WWP alleges that its "long-standing interests in preserving and conserving public lands managed by the BLM and NPS are threatened by the Defendants' decisions," citing a decision of the BLM Uncompahgre Field Office as a supposed example.  *See* SSC ¶ 32.  However, the Second Supplemental Complaint is silent as to how Defendants might "threaten," let alone harm, these interests.  More to the point, the Supreme Court has long held that a "special interest" in a subject, standing alone, does not permit a plaintiff to file suit as "there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization however small or short-lived."  *See Sierra Club v. Morton*, 405 U.S. 727, 739-40 (1972); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982) ("[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy.").  Accordingly, Plaintiffs' claims of injury on this point, which involve nothing more than a generic recitation of "interests," fall far short of the requirement to show concrete impairment of their services or operations.  *See, e.g., Lujan*, 504 U.S. at 563 ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured." (citation omitted)).[2]

---

[2] To the extent that it is maintained as a basis for injury, the same conclusion follows with respect to Plaintiffs' allegation that their group's "interests" were harmed by a lack of confirmation hearings for Mr. Pendley and Ms. Everson.  SSC ¶ 26.  Again, Plaintiffs fail to clarify how their interests could be harmed by the delegation procedure used here, but more importantly, abstract harm to organizational interests does not constitute Article III injury.

The only other potential injuries Plaintiffs allege with respect to their organizations is that they were somehow affected by certain of Defendants' actions.  At one point, Plaintiff WWP alleges that it has been "impacted by the specific actions and decisions of Defendants," without specifying the actions or the manner of their purported "impact."  *See* SSC ¶ 33.   Elsewhere in the Second Supplemental Complaint, Plaintiffs similarly allege that their groups were "impacted" by certain actions of Defendants, such as those relating to the use of "electronic bicycles," SSC ¶ 29(C), or a resource management plan approved by the BLM Uncompahgre Field Office, *id.* ¶ 27(E).

These ambiguous and fleeting references similarly fail to demonstrate standing.  Plaintiffs claim only that they were somehow affected or "impacted," by these actions, without actually alleging any injury, and provide nothing to explain the nature of such injury.  *Accord Byrne v. Clinton*, 410 F. Supp. 3d 109, 118 (D.D.C. 2019) (holding that "vague and conclusory claims" do not establish a concrete injury), *aff'd sub nom. Byrne v. Brock*, No. 19-7120, 2020 WL 1487757 (D.C. Cir. Feb. 27, 2020).

At bottom, to show injury to their organizations, Plaintiffs must show that the Defendants' actions "perceptibly impaired the organization's ability to provide services."  *See Ctr. for Responsible Sci. v. Hahn*, 809 F. App'x 10, 12 (D.C. Cir. 2020) (unpublished).  None of Plaintiffs' allegations come anywhere near a showing of perceptible impairment, and, as a consequence, Plaintiffs fail to establish injury to themselves as organizations.

### B.      Plaintiffs Do Not Allege Any Diversion of Resources

Even if Plaintiffs had demonstrated how Defendants had impaired their organizational operations, standing would still be lacking.  To establish the Article III injury-in-fact necessary to show organizational standing, a plaintiff group must first establish harm to its daily operations

or services, and second, show that that the group has affirmatively diverted money or other resources to address that harm. *See Int'l Acad. of Oral Med. & Toxicology v. USDA*, 195 F. Supp. 3d 243, 259 (D.D.C. 2016) (explaining that an organization must show that defendant's action "forced it to *divert or modify* its activities in [a] meaningful way from its standard programmatic efforts"). Plaintiffs both fail to even allege that they used their resources to counteract the alleged harm, and thus fail to satisfy the second element of this test.

Importantly, not just any diversion or use of resources will suffice to establish organizational standing. For instance, "[t]he expenditure of resources on advocacy is not a cognizable Article III injury." *See Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015). And resources spent educating the public or the organization's members cannot establish Article III injury "unless doing so subjects the organization to 'operational costs beyond those normally expended.'" *Food & Water Watch*, 808 F.3d at 920 (citation omitted).

Yet the Court need not parse the nature the resource expenditure in this case, because Plaintiffs have failed to even allege that they have been forced to divert any resources whatever due to the actions of Defendants. Not once in the Second Supplemental Complaint does either Plaintiff organization even mention expending or diverting resources to address some purported injury. Without even the barest allegation relating to the second prong required to establish organizational injury, Plaintiffs lack Article III standing to bring suit on their own behalf. *See Firearms Policy Coal., Inc. v. Barr*, 419 F. Supp. 3d 118, 125-26 (D.D.C. 2019) (rejecting standing where plaintiff organization had not shown diversion of resources caused by defendants).

## II.     Plaintiffs Lack Standing to Sue on Behalf of Their Members

Without any showing of injury affecting their own organizational interests, Plaintiffs are

left only with a fruitless attempt to claim standing on the part of their members.  To file suit on behalf of its members requires an organization to establish its "associational standing."  To do so, it must demonstrate that: "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit."  *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).  The Second Supplemental Complaint fails at the outset of the first prong, as it fails to show that even one of Plaintiffs' members has standing to sue in his or her own right.

### A.    Plaintiffs May Not Sue on Behalf of "Supporters" or Other Non-Members

As an initial matter, Plaintiffs appear to improperly claim injury on behalf of several categories of individuals apart from their purported members.  Specifically, Plaintiffs cite their "supporters," "clients," and "officers" as having been harmed or affected by certain of Defendants' actions.  *See* SSC ¶¶ 30-32.  Yet it is well established that associational standing may only rest upon injuries to members or "equivalent affiliates."  *See Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25–26 (D.C. Cir. 2002).

Here, Plaintiffs put forward no allegations or evidence that these non-members are the "equivalent" of members of their organizations.  As the D.C. Circuit has recognized, an organization may not claim standing on behalf of "supporters," for instance, because such a suit "bears none of the indicia of a traditional membership organization" claiming standing on behalf of its members.  *See Am. Legal Found. v. FCC*, 808 F.2d 84, 86 (D.C. Cir. 1987).  That is, an amorphous category of "supporters" does not constitute a "discrete, stable group of persons with a definable set of common interests."  Nor can supporters "play any role in selecting [an organization's] leadership, guiding [its] activities, or financing those activities"—another

requirement to establish the "equivalent" of participation in a traditional membership organization.  *Id.*  Similarly, plaintiff organizations may not claim standing on behalf of clients or other non-member persons or entities.  *See, e.g.*, *Fund Democracy*, 278 F.3d at 25 (finding no standing on the basis of plaintiff organization's "past work with various groups of individual investors," as they did not constitute "the equivalent of members"); *Conservative Baptist Ass'n of Am., Inc. v. Shinseki*, 42 F. Supp. 3d 125, 133 (D.D.C. 2014) (granting motion to dismiss because claimed injured members, while they "associat[ed] with the churches that comprise" the plaintiff organization, were "not members of" the organization).  At bottom, Plaintiffs may not properly claim standing on the basis of injury to persons or entities other than members of their organizations.

### B.     Plaintiffs Fail to Identify a Single Injured Member

Plaintiffs' allegations concerning injury to their members are similarly deficient, as they fail to identify any members who were purportedly injured by Defendants, and thus might have standing to sue in their own right.

"When a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured. Rather, the petitioner must specifically '*identify* members who have suffered the requisite harm.'"  *Chamber of Commerce v. EPA*, 642 F.3d 192, 199-200 (D.C. Cir. 2011) (emphasis added) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)).  Where plaintiffs have "not identified a single member who was or would be injured by [a Government action]," associational standing is lacking.  *Id.* at 200; *see also Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 15 (D.C. Cir. 2011) (affirming grant of a motion to dismiss where plaintiff's declarations "fall short of establishing certainly impending dangers for any particular member of the petitioners' associations" (citation omitted)).

Here, Plaintiffs cite only to their unidentified "members" as being harmed by Defendants' actions, and do not identify a single member who might demonstrate a concrete and particularized injury. *See* SSC ¶¶ 30-32 (referring to allegedly harmed "members"). This is insufficient. In a recent, analogous situation, this Court granted a motion to dismiss another challenge to an appointment under the Federal Vacancies Reform Act, because, among other reasons, the plaintiff organization had "not identified any specific member" that would suffer from some "imminent and concrete harm." *See Firearms Policy Coal.*, 419 F. Supp. 3d at 125. The same result should obtain here: where an organization does "not identify a single member or provide any declarations or statements," on her behalf, "the Court can do no more than speculate about whether any of [plaintiff's] members would have standing to sue in their own right." *See Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180, 193 (D.D.C. 2020) (granting motion to dismiss on this basis).

### C.     The Claimed Injuries to Plaintiffs' Unidentified Members Are Vague and Speculative

Even had Plaintiffs identified one or more specific members with alleged injuries, such members still could not demonstrate standing to sue in their own right, under the allegations set forth in the Second Supplemental Complaint. Of the few alleged harms or "impacts" pertaining to Plaintiffs' members, none rises to the level of an injury-in-fact sufficient to show standing.

First, Plaintiffs allege that their members could possibly be harmed by Defendants in the future, as "PEER's supporters/members within BLM and NPS are in reasonable fear of arbitrary re-assignments and transfers ordered by Pendley and Everson." SSC ¶ 31. Yet where, as here, Plaintiffs seek declaratory and injunctive relief for a "predicted future injury," Plaintiffs "bear[] a 'more rigorous burden' to establish standing." *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (quoting *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989)). That is, "[a]n

allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)).  And in evaluating such a claim, this Court "may reject as overly speculative . . . predictions of future injury that are 'not normally susceptible of labelling as 'true' or 'false.'" *Id.*; *see also Turlock Irr. Dist.*, 786 F.3d at 25 (holding that where an allegation is "wholly speculative," a court "need not accept [Plaintiff's] assertion").

Plaintiffs appear to argue that their unidentified members may be injured at some indeterminate point in the future if they are re-assigned or otherwise transferred in some unknown manner, as a result of Defendant's hypothetical future actions.  To the extent that Plaintiffs claim standing based on their members' subjective apprehension about possible future injury, such alleged fear is not enough to establish a concrete injury.  *See United Presbyterian Church in U.S.A. v. Reagan*, 738 F.2d 1375, 1379 (D.C. Cir. 1984) (rejecting contention that "fear constitutes cognizable harm"); *see also Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").  And as to future transfers or reassignments themselves, Plaintiffs provide no allegations or evidence to explain how or when these employment actions may take place, and more importantly, fail to demonstrate that such actions are "certainly impending" or otherwise likely to occur with respect to Plaintiffs' members in the future.  Thus, because Plaintiffs allege nothing more than a fear of possible injury to their members in the future, standing is lacking on this ground.  *See Ctr. for Biological Diversity v. DOI*, 563 F.3d 466, 478 (D.C. Cir. 2009) (holding that where petitioners could only aver that "any significant adverse effects . . . 'may' occur at some point in the future," it did "not

amount to the . . . 'certainly impending' injury required to establish standing.").

Elsewhere in the Complaint, Plaintiffs contend that their "supporters/members" have been "impacted by the COVID-19-based closures – and refusals to close – public access to the BLM and NPS lands managed by the Defendants."  SSC ¶ 27; *see id.* ¶ 29.  Putting aside the apparently contradictory nature of these allegations – that members were "impacted" both by closing and not closing access to lands – Plaintiffs again fail to explain the nature of any "impact" on their members from these decisions, and fail to clearly assert that their members have been *injured* from these purported decisions to close, or not close, access to certain public lands.  Where Plaintiffs provide only unadorned and conclusory statements alleging unspecified "impacts" to their members, they have not carried their burden to establish Article III injury.  *See Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (explaining that "conclusory statements and legal conclusions are insufficient to state a plausible basis for standing"); *Sierra Club v. EPA*, 754 F.3d 995, 1001 (D.C. Cir. 2014) (holding that "vague generalities" fail to demonstrate standing).

Finally, Plaintiffs attempt an amorphous catch-all claim of injury, asserting that their members have been "impacted by the specific actions and decisions of Defendants Pendley and Everson described [in the Complaint]."  *See* SSC ¶ 31; *see also id.* ¶ 33 (same).  As best Defendants can discern, this allegation references numerous "specific actions of Defendants" described throughout the Second Supplemental Complaint.  *See, e.g.*, *id.* ¶¶ 27(A)-(E), 29(A)-(C).  Yet Plaintiffs fail to explain which, if any, of these actions could be the basis for an injury to a specific member, or the nature of that injury.  And again, Plaintiffs do not actually allege that these unspecified actions in fact harmed their members, only that their members were affected or "impacted" in an unknown manner.  Perhaps for this reason, Plaintiffs raise no legal

challenge to any of these specific actions.  Absent a concrete claim of injury, this Court cannot reasonably determine whether and how Plaintiffs' members could be injured by Defendants, and standing is therefore absent.  In sum, "[v]ague factual allegations like this simply do not suffice."  *See Friends of Animals v. Jewell*, 115 F. Supp. 3d 107, 119 (D.D.C. 2015).

## III.    Plaintiffs Raise Only a Generalized Grievance

Because Plaintiffs fail to specify any cognizable injury to themselves or their members, it follows that they cannot show that such hypothetical injuries were in fact caused by Defendants, or could be redressed by this Court, the other two irreducible requirements of standing.  *Lujan*, 504 U.S. at 560-61.  Plaintiffs' deficiency across the board on standing is ultimately unsurprising, as the basis for their lawsuit reduces to a quintessential generalized grievance: a desire to seek compliance with the law.  In other words, Plaintiffs here present only "a generally available grievance about government—claiming only harm to [its] and every citizen's interest in proper application of . . . [certain statutes], and seeking relief that no more directly and tangibly benefits [Plaintiffs] than it does the public at large."  *Lujan*, 504 U.S. at 573-74 (collecting cases).

Plaintiffs obviously disagree with certain of Defendants' actions.  But Plaintiffs' "asserted right to have the Government act in accordance with" statutes relating to the delegation of authority exemplifies the kind of generalized and abstract grievance that does not give rise to Article III standing.  *See Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *see also Firearms Policy Coal.*, 419 F. Supp. 3d at 126 (dismissing suit challenging appointment under the FVRA, as assertions of standing amounted only to a "generalized grievance").  For this reason as well, Plaintiffs lack standing and their suit should be dismissed for lack of jurisdiction.

14

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiffs' Second Supplemental

Complaint pursuant to Rule 12(b)(1) for lack of standing.


Dated: September 14, 2020                                   Respectfully submitted,

                                                                      JEFFREY BOSSERT CLARK
                                                                      *Assistant Attorney General*
                                                                      Environment & Natural Resources Division
                                                                      *Acting Assistant Attorney General*
                                                                      Civil Division

                                                                      CHRISTOPHER R. HALL
                                                                      *Assistant Branch Director*

                                                                      /s/ *Michael Drezner*
                                                                      MICHAEL DREZNER (VA Bar No. 83836)
                                                                      BRADLEY CRAIGMYLE
                                                                      *Trial Attorneys*
                                                                      U.S. Department of Justice
                                                                      Civil Division, Federal Programs Branch
                                                                      1100 L Street, NW
                                                                      Washington, DC 20530
                                                                      Telephone: (202) 415-4505
                                                                      Facsimile: (202) 616-8460
                                                                      Email: Michael.L.Drezner@usdoj.gov

                                                                      *Counsel for Defendants*

15