**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY; WESTERN WATERSHEDS PROJECT,
962 Wayne Ave., Suite 610
Silver Spring, MD 20910
*Plaintiffs,*

v.

DAVID BERNHARDT, Secretary of the Interior, in his official capacity; WILLIAM PENDLEY Deputy Director, Bureau of Land Management, in his official capacity; and MARGARET EVERSON, National Park Service, in her official capacity,
1849 C Street, N.W.
Washington, D.C. 20240
*Defendants.*

Civil Action No. 20-1224-TSC

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## Table of Contents

Table of Contents ..... i

Table of Authorities ..... i

INTRODUCTION ..... 1

FACTS ..... 1

ARGUMENT ..... 2

I. The Defendants' Motion is Premature and Must be Stricken. ..... 3

II. Plaintiffs Have Standing ..... 4

A. Standards to Apply. ..... 4

B. Plaintiffs PEER and WWP Have Shown Injuries to Cognizable Interests. ..... 6

C. Plaintiffs' Injuries Are Traceable to the Challenged Actions and Redressable by a Favorable Decision from this Court. ..... 9

D. WWP and PEER Have Established Representational Standing. ..... 10

CONCLUSION ..... 15

## Table of Authorities

### Cases

*Akbar v. Cuccinelli*, 2020 U.S. Dist. LEXIS 47203 (D.D.C., March 18, 2020). ..... 4

*Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019) ..... 5, 6

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) ..... 13

*Firearms Policy Coal., Inc. v. Barr*, 419 F. Supp. 3d 118 (D.D.C. 2019)....................................... 9

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010)....................................... 5

*Fund Democracy, LLC v. SEC*, 278 F.3d 21 (D.C. Cir. 2002). ................................................... 14

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ................................ 10, 14

*Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95 (D.D.C. 2016) ................................................ 4, 10

*Landry v. F.D.I.C.*, 204 F.3d 1125 (D.C. Cir. 2000) .............................................................. 6, 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................... 4, 6

*N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929 (2017) ....................................................................... 5

*NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018)............................................................. 12

*Noel Canning v. N.L.R.B.*, 705 F.3d 490 (D.C. Cir. 2013), *aff'd,* 573 U.S. 513 (2014)................. 6

*Pub. Emps. for Envtl. Responsibility v. U.S. Dep't of the Interior*, 832 F. Supp. 2d 5 (D.D.C. 2011) ......................................................................................................................... 4, 9

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47 (2006)......................................... 4

*Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183 (2020) ...................................... 5

*Shays v. Fed. Election Comm'n,* 414 F.3d 76 (D.C. Cir. 2005)..................................................... 10

*Town of Barnstable v. F.A.A.*, 659 F.3d 28 (D.C. Cir. 2011) ........................................................ 4

*U.S. v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669 (1973) .................................... 5

*Verastegui v. McAleenan*, 2019 U.S. Dist. LEXIS 103465 (D.D.C., June 20, 2019)..................... 3

*Young Am.'s Found. v. Gates*, 560 F. Supp. 2d 39 (D.D.C. 2008) .............................................. 12

Statutes

43 USC §§1701-1785 .................................................................................................................. 1

5 U.S.C. § 701 .............................................................................................................................. 1

5 U.S.C. §§ 3345-3349d ............................................................................................................... 1

### Rules

Fed. R. Civ. P. 12 .......... 4

Local Civil Rule 7 .......... 1, 15

### Constitutional Provisions

U.S. Const. art. II, § 2 .......... 1, 5

## INTRODUCTION

This is an Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq*., based administrative review lawsuit. ECF No. 11, Second Supp. Compl. (*hereinafter* "SSC") ¶¶ 1, 10, 11, 19-23, 25, 34, and Counts I, II, and IV under Claims for Relief. It challenges agency actions in the form of two orders by Defendant Secretary of the Interior David Bernhardt designating Defendant William Pendley of the Bureau of Land Management (BLM) and Defendant Margaret Everson of the National Park Service (NPS) to "exercise the authority of the Director" of those respective agencies. Mr. Pendley then used the power given to him by Mr. Bernhardt to designate himself in his own "succession order" to be able to continue to exercise the authority of the BLM Director notwithstanding the later lapse of Mr. Bernhardt's order. SSC ¶ 23.

Because the two Bernhardt orders and one Pendley order (hereinafter, "the challenged actions") gave Mr. Pendley and Ms. Everson Director powers that contravened the Constitution's Appointments Clause, U.S. Const. art. II, § 2, and the Federal Vacancies Reform Act (FVRA), 5 U.S.C. §§ 3345-3349d, as well as the APA, the gist of this case is: "The challenged actions are arbitrary and capricious and unlawful under the Administrative Procedure Act." SSC ¶ 1. Further, the orders allowing Mr. Pendley to be the *de facto* Director of the BLM violated the Federal Land Policy Management Act (FLPMA). 43 USC §§1701-1785; *see* SSC ¶ 28. All three Defendants were sued in their official agency capacities for carrying out those illegal actions. SSC ¶ 7-9.

Initially, the Defendants' Motion to Dismiss and appended Memorandum (hereinafter, the "MTD;" ECF No. 13) is premature and must be stricken because the agency has not filed the Administrative Record as required by Local Civil Rule 7(n)(1) for administrative review cases. Further, their perfunctory standing challenge is wrong on the law.

## FACTS

For the purposes of this Opposition, Plaintiffs basically concur with the facts as set forth by Defendants in their Background, which states:

> Defendant William Perry Pendley is the Deputy Director, Policy and Planning, of the BLM, see SSC ¶ 8, and the office of the BLM Director is vacant. See id. ¶¶ 19, 22. Accordingly, in July 2019, the Secretary of the Interior delegated to Defendant Pendley the delegable duties of the BLM Director. Id. ¶ 20. Before the Secretary's delegation order expired on its own terms, the Secretary redelegated the authority to Pendley. See, e.g., id. ¶¶ 19, 34. The Secretary's latest redelegation order expired on June 5, 2020. Id. ¶ 34. As a result, Defendant Pendley is currently exercising the delegable duties of the BLM Director under a BLM succession order. See id. ¶ 23.
>
> Regarding the National Park Service ("NPS"), the office of NPS Director is similarly vacant. *See id.* ¶¶ 22, 25. As a consequence, in August 2020, the Secretary of the Interior delegated to Defendant Everson the delegable duties of the NPS Director. *See id.* Defendant Everson is currently exercising the delegable duties of the NPS Director under the Secretary's delegation order. *See id.*
>
> Plaintiffs broadly challenge (1) the Secretary's redelegation orders that allowed Defendant Pendley to exercise the delegable duties of the BLM Director in the past, (2) the agency's succession order that Defendant Pendley is currently exercising the delegable duties of the BLM Director under, and (3) the Secretary's order that Defendant Everson is currently exercising the delegable duties of the NPS Director under. *See id.* ¶¶ 38–41, 43–46.[1]

MTD at 3 (footnote omitted). Plaintiffs Public Employees for Environmental Responsibility (PEER) and Western Watersheds Project (WWP) also rely on the facts as set forth in their Complaint. SSC ¶¶ 5-36. They further submit six appended fact declarations in support of their standing: Erik Molvar (WWP), Barbara Moritsch (WWP), Richard Kroger (both PEER and WWP), Timothy Whitehouse (PEER), and two John Does, A. and B. (PEER). They also append the Declaration of Peter T. Jenkins in Support of Filing of John Doe Standing Declarations.

## ARGUMENT

[1] While Defendants have fairly accurately recited the Background, their characterization that Plaintiffs "broadly challenge" the actions at issue is wrong. The challenge focuses narrowly on specific facts and laws.

## I. The Defendants' Motion is Premature and Must be stricken.

Defendants failed to file the Administrative Record as required by Local Civil Rule 7(n)(1) for administrative review actions such as this. It provides:

> **(n) MOTIONS INVOLVING JUDICIAL REVIEW OF ADMINISTRATIVE AGENCY ACTIONS.**
> (1) In cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first.

The MTD plainly is a dispositive motion. The absence of a simultaneously-filed certified list of the contents of the Administrative Record prejudiced Plaintiffs' ability not only to prove their case on the merits, but also to further link their standing to the challenged actions by the agencies involved.

Strangely, the MTD just ignores Local Civil Rule 7(n)(1). Instead, it makes the self-serving mischaracterization that Plaintiffs "Hav[e] not challenged any discrete action…" MTD at 1. That is belied by the very facts that Defendants cited in their Background, quoted *supra*. That is, they recited the three discrete agency actions that are challenged here:

> (1) the Secretary's **redelegation orders** that allowed Defendant Pendley to exercise the delegable duties of the BLM Director in the past, (2) the agency's **succession order** that Defendant Pendley is currently exercising the delegable duties of the BLM Director under, and (3) the Secretary's **order** that Defendant Everson is currently exercising the delegable duties of the NPS Director under.

*Id*. (emphasis added). The full Administrative Record is required for each of the agency orders bolded above. *See Verastegui v. McAleenan*, 2019 U.S. Dist. LEXIS 103465, at *7 (D.D.C., June 20, 2019) ("any proposed dispositive motion [Defendant] seeks leave to file shall be accompanied by a certified list of the contents of the administrative record, as required by Local Civil Rule 7(n)"). Defendants also failed to file a motion for relief from the local rule, as would be appropriate

in cases where an agency does not file the Administrative Record because it believes no jurisdiction exists. *Akbar v. Cuccinelli*, 2020 U.S. Dist. LEXIS 47203 (D.D.C., March 18, 2020).

In sum, the MTD is premature until the Defendants file the certified index of the Record or a proper motion seeking relief from the Local Rule. The MTD should be stricken.

## II. Plaintiffs Have Standing

### A. Standards to Apply.

Defendants' MTD was made under Fed. R. Civ. P. 12(b)(1). To move a case past a Rule 12(b)(1) motion, the Plaintiffs need to show by a preponderance of the evidence that the Court has jurisdiction. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In evaluating Defendants' 12(b)(1) motion, the Court must accept the Plaintiffs' factual allegations as true and give them the benefit of all inferences from the facts alleged. *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016).

Standing is demonstrated by: (1) an "injury in fact," (2) that is "fairly traceable to the challenged action of the defendant," and (3) it is likely the injury will be "redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement. *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2, (2006). In addition, the Court must presume that Plaintiffs will prevail on the merits – meaning here that the Court will declare that the three challenged actions are invalid and enjoin Defendants Pendley and Everson from continuing to act in their *de facto* acting Director positions in the BLM and NPS, respectively. *Town of Barnstable v. F.A.A.*, 659 F.3d 28, 31 (D.C. Cir. 2011); *Pub. Emps. for Envtl. Responsibility v. U.S. Dep't of the Interior*, 832 F. Supp. 2d 5, 16 (D.D.C. 2011).

This case does not present the standard administrative review standing debates. It is not an environmental case targeting specific actions by Mr. Pendley at the BLM and Ms. Everson at the NPS, as the MTD portrays it. Defendants' arguments rest on the quicksand of mischaracterizing the challenged actions. The MTD focuses on the "downstream" effects of the challenged actions, which effects do bolster the Plaintiffs' standing, but they are not the challenged actions themselves. Rather, this suit is a constitution-based challenge under the Appointments Clause, a "critical structural safeguard" of our democracy, that requires those exercising the authorities of "officers of the United States," such as the BLM and NPS Directors, here, to first be nominated by the President and confirmed upon advice and consent of the U.S. Senate. *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017). This suit also seeks to vindicate FVRA, which is a key bulwark in the separation-of-powers between Congress and the Executive by defining strictly how such Director authorities may be temporarily exercised. The complaint lays out in detail how the Defendants have serially abused the Constitution and FVRA.

The Supreme Court has held that "a separation-of-powers violation may create a 'here-and-now' injury that can be remedied by a court". *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010). It is "sufficient that the challenger sustains injury from an executive act that allegedly exceeds the official's authority". *Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183, 2196 (2020). Moreover, "[t]he required injury to challenge agency action is minimal: the Supreme Court has 'allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax.'" *Collins v. Mnuchin*, 938 F.3d 553, 586 (5th Cir. 2019), *cert. granted*, 2020 WL 3865248 (U.S. July 9, 2020) (quoting *U.S. v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973)). That is particularly so when the Appointments Clause is involved, because

any action taken by an improperly appointed agency official is "void ab initio". *Noel Canning v. N.L.R.B.*, 705 F.3d 490, 493 (D.C. Cir. 2013), *aff'd,* 573 U.S. 513 (2014).

The D.C. Circuit has instructed, "judicial review of an Appointments Clause claim will proceed even where any possible injury is radically attenuated". *Landry v. F.D.I.C.*, 204 F.3d 1125, 1131 (D.C. Cir. 2000). Indeed, "[f]or Appointments Clause violations, demand for a clear causal link to a party's harm will likely make the Clause no wall [to interbranch conflict] at all." *Id.*; *see also Collins*, 938 F.3d at 586 ("[S]tanding does not require proof that an officer would have acted differently in the 'counterfactual world' where he was properly authorized."). In sum, the Plaintiffs' standing burden is very light here.

**B. <u>Plaintiffs PEER and WWP Have Shown Injuries to Cognizable Interests.</u>**

The "injury in fact" requirement involves injury to an interest that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. Here, PEER's and WWP's standing declarations are replete with "particularized" examples of actual injuries to their interests from actions taken by Mr. Pendley and Ms. Everson that were *ultra vires* because the agency orders were illegal that purported to grant them their authority to act as Directors in the first place.

Timothy Whitehouse, PEER' Executive Director, states:

> PEER serves and protects current and former federal and state employees of land management, wildlife protection, and pollution control agencies who seek to promote an honest and open government and help hold governmental agencies accountable for faithfully implementing and enforcing the environmental laws entrusted to them by Congress.
>
> PEER … is harmed by the Defendants' past and ongoing violations of the Federal Vacancies Reform Act (FVRA) because PEER has a strong interest in ensuring that the BLM and NPS employees whom we represent serve under a properly Senate-confirmed or otherwise FVRA-compliant Director. PEER has a long history of advocacy, education, and other engagement regarding the Department of the Interior's ongoing excessive vacancies and its FVRA violations, particularly those involving the Defendants in this case: Bernhardt, Pendley, and Everson and former Defendant Vela. PEER has filed numerous Freedom of Information Act (FOIA)

> requests regarding the top-level Interior appointees; issued a major report on the topic, *Bernhardt's Bad Actors*; filed complaints to the Department of the Interior Inspector General; written to Government Accountability Office and expended major staff time, funding, and other resources to reveal these violations. In short, these issues are fundamental to our purpose and mission and we have devoted substantial resources to them.

Decl. of Timothy Whitehouse ¶¶ 3-4. Mr. Whitehouse goes onto describe specific actions by William Pendley while he "exercised the authority of the Director" that harmed PEER and its supporter, including moving the BLM Headquarters from Washington, DC, to Grand Junction, Colorado; making COVID-19 closure and non-closure decisions that impacted PEER's clients and supporters in BLM; refusing to provide a full Freedom of Information Act response regarding a major policy pronouncement that led to PEER litigation against him; and other direct impacts. *Id.*, at ¶¶ 5 and 6.

With respect to Ms. Everson who is now acting as the NPS Director, Mr. Whitehouse states several impacts to PEER from her actions. *Id.*, at ¶ 8. Most specifically:

> Ms. Everson is continuing with the implementation of a de-regulatory Directive under which, by fiat of former Deputy Directors Vela and P. Daniel Smith "exercising the authority of the Director," electronic bicycles (e-bikes) are now allowed in the National Parks despite being previously prohibited from Parks under NPS regulations. Ms. Everson's ongoing action on e-bikes is directly impacting PEER, which is a Plaintiff in ongoing litigation against the NPS based on the harm from e-bikes.
>
> The National Park Foundation (NPF) placed Ms. Everson onto its Board of Directors in the NPS Director's position, identifying her as 'Secretary, *Ex-Officio* Director, Counselor to the Secretary, Exercising the Delegated Authority of the Director of the National Park Service'. PEER has a long history of advocacy regarding NPF decisions; we are harmed by Ms. Everson illegitimately participating in Board decisions while masquerading in the NPS Director's *ex officio* position.

*Id.*, at ¶¶ 9-10. Similarly, the WWP's Executive Director, Erik Molvar, states:

> WWP is a non-profit corporation dedicated to protecting and restoring wildlife and watersheds on public lands throughout the American West. . . . WWP and many of our more than 12,000 members and supporters have long-standing

> interests in preserving and conserving public lands managed by the Bureau of Land Management (BLM) and National Park Service (NPS).
>
> WWP and our officers and members are harmed by the Defendants' past and ongoing violations of the Federal Vacancies Reform Act (FVRA) because WWP has a strong interest in the legitimacy of the leaders of the BLM and NPS, which are two of the nation's largest public lands managers. WWP's mission and very existence are tied to protecting and restoring wildlife and watersheds on BLM and NPS lands; long-standing interests in preserving and conserving public lands managed by the BLM and NPS are threatened by the illegitimacy of decisions by the Defendants Pendley and Everson. In particular, WWP specializes in the enforcement of federal laws and regulations regarding livestock use on NPS- and BLM-managed federal lands, and regarding mineral development on BLM lands. WWP has expended major staff time, funding, and other resources to reveal the legal violations connected to their appointments and to advocate to Congress and the Administration to remove them, including drafting and publishing several opinion-editorials regarding the illegitimate acts of William Perry Pendley, and organizing and submitting a letter to Interior Secretary Bernhardt co-signed by 90 other conservation organizations . . . .

Molvar Decl. ¶¶ 3-4. He describes various specific harms to WWP from Mr. Pendley's actions.

*Id.*, at ¶ 5. Most directly, he declares

> Mr. Pendley personally signed a decision dated May 13, 2020, illustrated in the letter attached with this declaration, rejecting a request by WWP and other conservation groups to suspend action on a Pinyon-Juniper Categorical Exclusion, proposed to allow the destruction of pinyon-juniper woodlands of up to 10,000 acres without a detailed environmental review. The destruction of pinyon-juniper woodlands is known to destroy habitat for juniper obligate songbirds, harm mule deer and other mammals that depend on pinyon-juniper woodlands for habitat, and accelerate the spread of the non-native weed cheatgrass, which is highly flammable and establishes monocultures that destroy wildlife habitat values and lead to unnaturally large and frequent wildfires. This action by Pendley "exercising the authority of the Director" harmed WWP's interest in preserving pinyon-juniper woodlands.

*Id.*, at ¶ 5(E); *see also* attached Pendley letter. With respect to Ms. Everson, Mr. Molvar states several impacts to WWP from her actions. Most specifically that she has made decisions not to close Park facilities despite COVID-19 risks, which directly impacted him and other WWP members. Decl., ¶ 7.

Plaintiffs have established cognizable organizational interests in the BLM and NPS having proper Senate-confirmed or FVRA-compliant Directors. Additionally, protecting the abilities of BLM and NPS employees, such as John Does A. and B., whose interests are described in detail below - and others similarly situated - to engage in responsible resource protection in the BLM and NPS is absolutely fundamental to Plaintiff PEER's very mission and purpose (indeed, it is why PEER was founded). Whitehouse Decl., ¶ 3. PEER has expended significant organizational resources to protect such employees and to protect its own interest in having properly-appointed BLM and NPS Directors. *Id.*, ¶¶ 4 and 11.

In short, this case, with concrete injuries to WWP's and PEER's organizations and missions as a result of the Appointments Clause and FVRA violations alleged, is far different from the weak facts and generalized grievances alleged in *Firearms Policy Coal., Inc. v. Barr*, 419 F. Supp. 3d 118, 125-26 (D.D.C. 2019), cited by Defendants (MTD, at 8. 14). There, the plaintiffs just speculated about possible future harm to their organization's interests in access to firearms; here there is real harm from the ongoing, thus still "imminent," violations by the Defendants. And, while the bulk of the D.C. cases cited by Defendants did not involve the Appointments Clause, again here "judicial review of an Appointments Clause claim will proceed even where any possible injury is radically attenuated". *Landry*, 204 F.3d at 1131.

### C. Plaintiffs' Injuries Are Traceable to the Challenged Actions and Redressable by a Favorable Decision from this Court.

To show standing, "[c]ausation 'demands a causal connection between the injury and the conduct complained of' or, in other words, 'the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *PEER*, 832 F. Supp. 2d at 18 (quoting *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 83 (D.C. Cir. 2005)). Plainly, the illegal Bernhardt and Pendley orders as alleged are the actions that

have allowed Mr. Pendley and Ms. Everson to continue to "exercise the authority of the Director" of the BLM and NPS, respectively.[2] SSC ¶¶ 19-25, 34, 35. There was no independent third party actor between Secretary Bernhardt and Mr. Pendley or Ms. Everson.

Plaintiffs seek an order declaring their appointments illegal and enjoining future appointments "in violation of the APA, FVRA, and FLPMA". SSC, Prayers for Relief A. through E., pp. 16-17. Such declaratory and injunctive relief would staunch the nearly four years running of the BLM and NPS being helmed by a series of illegitimate *quasi*-Directors in defiance of the Appointments Clause. Such relief would make it abundantly clear to Interior Secretary Bernhardt and the Administration that those two agencies must be led by Senate-confirmed Directors or properly-appointed FVRA-compliant "Acting Directors" (which Pendley and Everson are not; SSC, ¶¶ 19—25, 34, 35). In short, Plaintiffs' claims are fully redressable.

### D. <u>WWP and PEER Have Established Representational Standing.</u>

To satisfy Article III representational standing, an organization must establish that: (1) its members/equivalents have standing to sue in their own right, (2) the interests at stake are germane to the purpose of the organization, and (3) neither the claims nor relief require direct participation of its members/equivalents in the lawsuit. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

**Regarding WWP:** WWP's member declarations make clear that, in their own right, they have interests at stake directly germane to WWP's purposes that the organization is pursuing in this lawsuit. The interest of the individual members fall squarely within the organizations'

[2] Again, when considering a motion to dismiss the allegations of the complaint are entitled to a presumption of truth and the support of inferences that can be drawn from them. *Jeong Seon Han*, 223 F. Supp. 3d, at 103.

respective missions. Further, there is no aspect of the claims or relief sought here, e.g., seeking monetary damages, that would require the members' direct participation as named Plaintiffs.

Specifically, Barbara Moritsch, a WWP member, states she is a "retired United States National Park Service (NPS) employee, and held positions as Ecologist, Biologist, and Biological Technician in five different national park units in the western United States". Decl., ¶ 3. Citing several harms inflicted on her by Mr. Pendley's decisions as the quasi-Director, she emphasizes this:

> Under Mr. Pendley's direction, new plans recently were adopted in Montana that eliminate protection of areas of critical environmental concern and lands with unique wilderness characteristics, and make 95 percent of federal public land in Montana available for oil and gas development. I live in Idaho, and recreate in Montana. As an ecologist and wildlife viewer, I know these new plans will adversely affect the quality of BLM lands.

Moritsch Decl. ¶ 6. She goes on to express similar harms to her resulting Ms. Everson's NPS appointment. *Id*., at ¶¶ 8-11. Similarly, Richard Kroger, a WWP member, states he is an:

> 80-year old Disabled Veteran who not only has used our Bureau of Land Management (BLM) managed lands for outdoor recreation activities since 1976, but was also employed by the agency for nearly 10 years as a District Fishery/Aquatic/Wetland/Riparian Biologist.

Kroger Decl., ¶ 3. He testifies from inside knowledge how Mr. Pendley's "politically motivated" forced relocation of the BLM Headquarters to western Colorado will harm not only the agency, but also will harm BLM's regular visitors, like him, whose influence has now been overshadowed by that of "the extractive industries (oil and gas, and other minerals, and grazing)". *Id*., at ¶ 7. He goes on to state:

> The mismanagement of BLM lands under Pendley's direction is likely to impair my future enjoyment of these lands and harm my interests in keeping them healthy and beautiful because failure to follow the National Environmental Policy Act (NEPA) and FLPMA requirements will allow oil wells to displace Sage Grouse on their leks – thus reducing population numbers for hunting. Likewise, reversing

> grazing management requirements will allow over-utilization of vegetation – thus destroying habitat on wildlife species that I hunt and watch.

*Id.*, at ¶ 9. Both Ms. Moritsch (NPS) and Mr. Kroger (BLM) are highly-qualified, and highly concerned, former scientists and employees of the two agencies at issue. The close linking of their interests to WWP's mission is confirmed in the declaration of its Executive Director, Erik Molvar.

**Regarding PEER:** The Declaration of Richard Kroger is described above; he also is a PEER supporter, whose presence bolsters PEER's representational standing. PEER's interests are further established in the two appended anonymous standing declarations, one from a current BLM resource management specialist and the other from a current NPS scientist. Decl.s of John Does A and B, respectively. Both have been PEER supporters at the relevant times hereto.[3]

The use of anonymous declarations to show association standing is accepted, particularly when the declarants fear retaliation by their agencies for submitting their declarations, as here. *NAACP v. Trump*, 298 F. Supp. 3d 209, 225-226, (D.D.C. 2018) ("[E]ach plaintiff provided an anonymous affidavit from at least one of its members stating that the member was a DACA beneficiary, see, e.g., Princeton MSJ, Ex. W (declaration of NAACP member), and the government does not seriously dispute—nor could it—that these affidavits are sufficient"); *Young Am.'s Found. v. Gates*, 560 F. Supp. 2d 39, 49 (D.D.C. 2008) ("[I]t is not clear that [associational standing] actually requires a name-specific identification."), *aff'd*, 573 F.3d 797, 387 U.S. App. D.C. 328 (D.C. Cir. 2009); *see Doe v. Stincer*, 175 F.3d 879, 884 (11th Cir. 1999) ("[W]e have never held

---

[3] The reliability of the John Doe declarations is enhanced by the appended Declaration of Peter T. Jenkins in Support of Filing of John Doe Standing Declarations. Mr. Jenkins states that he is an attorney for PEER; that he knows both the John Doe Declarants; that he confirmed that they wanted to file their standing declarations and that they feared potential retaliation by their agencies for doing so; and he knows they were PEER supporters at the relevant times.

that a party suing as a representative must specifically name the individual on whose behalf the suit is brought".)

John Doe A is a current GS-11 employee with over 22 years of experience in BLM working in resource management in a western State. John Doe A Decl. ¶ 2. He observes:

> [T]he lack of a confirmed BLM Director over the last four years has really harmed the agency's overall functioning. Staff morale is rock-bottom and the BLM lacks direction. This has harmed the day-to-day effectiveness of staff and resulted in harm to the extensive natural resources that the agency manages. This harm includes, but is not limited to: excessive oil and gas extraction without appropriate mitigation, unenforced illegal grazing, and failure to aggressively protect scarce water resources on BLM land.

*Id.*, at ¶ 3. Further he is "convinced, based on my many years of experience, that if the agency had a Senate-confirmed Director, BLM's management and morale would improve. That would both help me do my job and improve the resource protection that is a key part of my agency's mission." *Id.*, at ¶ 4. This takes BLM's Director-less state out of what may appear to some as a legalistic abstraction, down to reality based on John Doe A's 22 years of experience there. His own and the bureau's functioning have suffered – and, even more concretely, he establishes that the resources that he and his agency manage are being harmed as a result.

Similarly, John Doe B is a current GS-13 employee with over 20 years of experience in the NPS working in resource science. John Doe B Decl. ¶ 2. He observes that the:

> [L]ack of a confirmed NPS Director over the last four years harmed the agency's overall functioning. Staff morale is low and the NPS lacks direction. This has harmed the day-to-day effectiveness of staff and resulted in harm to the extensive natural resources that the agency manages. This harm includes, but is not limited, the failure to aggressively protect the valuable and vulnerable flora and fauna on NPS land.

*Id.*, at ¶ 3. He also expresses that the resulting harm to his own functioning is redressable. "[I]f the agency had a Senate-confirmed Director, NPS's management and morale would have improved.

That would both have helped me do my job as a scientist and improved the Park System protection that is fundamental to the agency's mission." *Id.*, at ¶ 4.

PEER's mission is representing public employees like John Does A and B, who also would have standing to sue in their own right, but who likely would be retaliated against were they to do so. It is clear that their interests at stake are thoroughly germane to the purpose of PEER.

While the *Hunt* decision refers to an organization's "members," it conferred standing on a non-membership organization, the Washington State Apple Advertising Commission, an agency that represented the interests of apple growers and dealers. *Hunt*, 432 U.S. at 342. The Court found that the growers and dealers were basically the equivalent of members because they possessed the "indicia" thereof. *Id.*, at 344.

Defendants' cite to *Fund Democracy, LLC v. SEC*, but this is a poor comparison. 278 F.3d 21, 25–26 (D.C. Cir. 2002). In *Fund Democracy*, the plaintiff was a one-person business that claimed loose association with other allegedly like-minded businesses. In denying standing the court relied on the fact that "it is not clear that Fund Democracy has either members or any equivalent affiliates. Fund Democracy admitted in another pleading that it is a one-person business …….he argues that Fund Democracy 'represents' an 'informal consortium' of various groups". *Id.* But here, WWP clearly has "members" – they are fully identified in the Richard Kroger and Barbara Moritsch declarations.

Further, the two anonymous Federal government employee John Doe supporters are the equivalent of PEER members who are tightly aligned with its very *raison d'etre*.[4] They meet the Supreme Court test as stated in *Hunt*, *supra*, as also does PEER's <u>named</u> supporter, Richard

[4] PEER's non-profit corporate structure does not include membership.

Kroger. Finally, each of them has alleged past and ongoing injuries from the Pendley and Everson appointments. The Defendants mischaracterize them as speculative. MTD, at 11-14.

## CONCLUSION

The Court need not address the substance of Defendants' MTD because of their procedural violation of Local Civil Rule 7(n)(1). Their action is premature for failing to assemble the Administrative Record first and it should be stricken.

Nevertheless, if the Court does address the substance, it should deny the MTD. In view of the attenuated injury requirements to maintain an Appointments Clause-based suit claiming a violation of separation-of-powers, as cited under "A. Standards to Apply," *supra*, the Court should find that Plaintiffs WWP and PEER readily have both organizational and representational standing. The preponderance of evidence shows Plaintiffs have presented injuries-in-fact fairly traceable to the challenged action of the Defendants. Further, were the Court to grant the relief that Plaintiffs seek of preventing William Pendley and Margaret Everson from continuing to "exercise the authority of the Director" of the BLM and the NPS based on the three allegedly illegal orders under which they now are doing so, that would satisfactorily redress the Plaintiffs' injuries.

A proposed order denying Defendants' motion is filed herewith.

Dated: September 25, 2020

Respectfully submitted,

Peter T. Jenkins

D.C. Bar No. 477229
Paula Dinerstein
D.C. Bar No. 333971
Public Employees for Environmental Responsibility
962 Wayne Ave., Suite 610
Silver Spring, MD 20910
202.265.4189 (tel.)
pjenkins@peer.org
pdinerstein@peer.org