**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY; WESTERN WATERSHEDS PROJECT, 962 Wayne Ave., Suite 610 Silver Spring, MD 20910     *Plaintiffs*, <br><br> v. <br><br> DAVID BERNHARDT, Secretary of the Interior, in his official capacity; WILLIAM PENDLEY, Deputy Director, Bureau of Land Management, in his official capacity; and MARGARET EVERSON, National Park Service, in her official capacity, 1849 C Street, N.W. Washington, D.C. 20240     *Defendants.* | Civil Action No. 20-1224-TSC |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF  EXPEDITED MOTION FOR
PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 4

STATUS OF PROCEEDINGS ........................................................................... 4

UNDISPUTED FACTS FOR SUMMARY JUDGMENT ................................ 5

CONSTITUTIONAL AND STATUTORY PROVISIONS ............................... 7

BACKGROUND ................................................................................................ 9

    A.    The Federal Vacancies Reform Act provides the only authority for acting officials to exercise the authority of a vacant office. .................................. 9

    B.    The National Park Service Director wields broad federal power and must be appointed by the President and confirmed by the Senate. .......................... 9

    C.    The National Park Service has had no Director or FVRA-compliant Acting Director for almost four years. ................................................................ 10

LEGAL STANDARD ...................................................................................... 10

ARGUMENT .................................................................................................... 11

    I.    The Plaintiffs have standing ................................................................. 11

    II.    Margaret Everson's continued exercise of the Director's authority violates the Constitution's Appointments Clause. ................................. 13

    III.    The FVRA does not permit Everson's continued exercise of the NPS Director's authority. ............................................................................ 14

    IV.    Judge Morris' opinion in the comparable Pendley case is persuasive. ............................ 17

    V.    Expedited review is appropriate because of the nature of the constitutional violation and the ongoing harm that it causes. ................................ 19

CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

### Cases

*Abourezk v. Reagan*, 785 F.2d 1043  (D.C. Cir. 1986) ............................... 18

*Casa de Maryland, Inc. v. Chad F. Wolf*, Case No. 8:20-cv-022118-PX (D. Md. Sept. 11, 2020) ........................................................................... 12, 18

*Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 185 (D.C. Cir. 2017)…………………… 12

*Edmond v. United States*, 520 U.S. 651 (1997) ....................................... 9, 12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010)..................................... 12

*Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) .................................................... 13

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109
   (D.D.C. 2019) ................................................................................................................. 18, 19

*Hooks v. Kitsap Tenant Support Servs.*, 816 F.3d 550 (9th Cir. 2016)........................................ 19

*L.M.-M. v. Kenneth T. Cuccinelli II*, 442 F. Supp. 3d 1 (D.D.C. 2020) ............................... 16, 18

*Landry v. F.D.I.C.*, 204 F.3d 1125 (D.C. Cir. 2000) .................................................................. 11

*Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). .............................................................................. 9, 13

*Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005)......................... 13

*N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929 (2017) ............................................................. 3, 9, 17

*WildEarth Guardians v. Jewell*, 738 F.3d 298, 306 (D.C. Cir. 2013)………………………  13

## Rules

Fed. R. Civ. P. 56.................................................................................................................. 11

Local Civil Rule 7 ................................................................................................................... 5

## Constitutional Provisions

United States Constitution**.** Article II, Section 2..................................................................... 7, 9

## INTRODUCTION

At the heart of our national charter is the principle that federal power must be divided and balanced among three separate branches of government. As part of this division, the Constitution's Appointments Clause requires that the President nominate, and that the Senate confirm, the heads of significant federal agencies—a process that the Supreme Court has referred to as a "critical structural safeguard" of our democracy. *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017).

This case challenges a flagrant breach of that safeguard. The National Park Service (NPS) wields broad federal power, overseeing the use, interpretation, and conservation of almost 100 million acres of America's natural and historic "crown jewels". Yet the NPS has been run by unconfirmed *de facto* acting Directors via a long-running series of "temporary" orders during the Trump presidency. The current *de facto* acting Director is Margaret Everson, who has unlawfully helmed the agency without Senate confirmation since August 10, 2020. She is but the latest player in the Administration's abuse of the Constitution's power balancing mandate. This Court can weigh in to stop this abuse.

## STATUS OF PROCEEDINGS

Plaintiffs filed their original Complaint on May 11, 2020. ECF No. 1. Due to changed facts regarding the Defendants' appointment orders for the *de facto* acting Director of the NPS, Plaintiffs obtained leave of the Court to file their First Supplemental Complaint on July 7. ECF No. 7. Then, on August 26, following on Defendant Bernhardt's replacement of former Defendant David Vela of the NPS with the current Defendant Margaret Everson, Plaintiffs obtained leave of the Court via an unopposed motion to file their Second Supplemental Complaint. ECF No. 11 (*hereinafter* "SSC"). On September 14, Defendants filed a Motion to Dismiss the SSC, alleging that Plaintiffs

4

lack standing. ECF No. 13. Next, on September 25, Plaintiffs filed their Opposition to that Motion to Dismiss, accompanied by seven declarations establishing their standing. ECF No. 14.

Importantly, the present motion is partial because it seeks summary judgment only on the claims in the SSC that are relevant to Defendants David Bernhardt and Margaret Everson regarding Ms. Everson's position with the NPS. (SSC ¶¶ 37-46, Counts I and II.) Plaintiffs' claims specific to Defendant William Pendley of the Bureau of Land Management (BLM) (SSC ¶¶ 47-54, Counts III and IV) are now considered mooted, at least temporarily, by the very recent order of Judge Brian Morris of the District Court of Montana on September 25th, finding Mr. Pendley's position to be illegal and enjoining him from continuing in it.[1] The Plaintiffs are not dismissing their claims against Pendley, rather they are held in abeyance pending possible future changes in his legal status and a determination of the full relief to be granted in the Montana case.[2]

## UNDISPUTED FACTS FOR SUMMARY JUDGMENT

As Plaintiffs briefed in their Opposition to Defendants' Motion to Dismiss (ECF No. 14), the Defendants filed that motion without having first prepared an Administrative Record as required by Local Civil Rule 7(n)(1). Nevertheless, this case primarily requires the Court's interpretation of the law. The basic facts regarding Margaret Everson's appointment as the *de facto*

---

[1] Case No. 4:20-cv-00062-BMM (D. Mont. Sept. 25, 2020). Full caption: "Steve Bullock, in his official capacity as Governor of Montana; Montana Department of Natural Resources and Conservation, Plaintiffs, vs. United States Bureau of Land Management, an agency within the United States Department of the Interior; William Perry Pendley, in his official capacity as the person exercising authority of the Director of the Bureau of Land Management; United States Department of the Interior; David Bernhardt, in his official capacity as Secretary of the United States Department of the Interior, Defendants".
[2] Judge Morris's Order directed the parties to file additional briefing by October 5th on the scope of possible additional relief that he should grant. Order at 33-34. Plaintiffs reserve the right to seek future relief here with respect to Mr. Pendley should that become necessary.

acting Director of the NPS, and the history of her predecessors in that role since January of 2018, are undisputed. Therefore, Plaintiffs submit their Statement of Undisputed Facts for Summary Judgment (SUF) herewith. Relying on this Statement is further appropriate because the Plaintiffs demonstrate an urgency to resolve this Expedited Motion soon and because the Defendants should not benefit from a delay caused by their failure to produce the Administrative Record contrary to the Local Rule.

The undisputed facts from Plaintiffs' SUF are (footnotes omitted):

1.      The initial appointment of a National Park Service (NPS) acting Director pertinent here began in office when former Secretary of the Interior Ryan Zinke appointed Mr. P. Daniel Smith as "acting Director" of the NPS on January 24, 2018.

2.      Defendant Secretary of the Interior David Bernhardt replaced Mr. Zinke and he later appointed Mr. Smith as Deputy Director and he "redelegated" authority to Mr. Smith to exercise the authority of the NPS Director. The final Bernhardt Redelegation Order under which Mr. Smith served was Amendment No. 28, dated July 29, 2019.

3.      Then, the former Defendant in this case, David Vela, began in the role of NPS Deputy Director "exercising the authority of the Director," pursuant to Secretary Bernhardt's redelegation Order Amendment No. 29, effective September 30, 2019. Vela's appointment was continued after that via three consecutive temporary Redelegation Orders.

4.      Beginning on June 4, 2020, David Vela began exercising the authority of the NPS Director under a Succession Order of that date that he issued. It was not made public and is not known to exist online; a copy is attached to the SUF as Exhibit A. He named his own position, "Deputy Director, Operations," as the first successor to the Director of the NPS. He delegated himself "the authority to perform all duties and responsibilities of the Director . . . to perform essential functions and activities of the office." No termination date applied.

5.      On August 7, 2020, Secretary Bernhardt announced Defendant Margaret Everson, was replacing David Vela exercising the authority of the NPS Director. By Bernhardt's temporary Redelegation Order 3381, dated August 10, he formally gave Everson that authority effective immediately, with no termination date.

6.      Ms. Everson does not work in the NPS; she remains as "Counselor to the Secretary" per Order 3381. The NPS holds her out to the public as exercising authority of the Director in official communications and on its website.

7.      Since taking office on August 10, 2020, Ms. Everson has performed numerous functions of the NPS Director, including, but not limited to, within one month appointing a new Assistant to the Director; a new permanent Associate Director; and a new Deputy Director of Operations.

8.      President Trump has never named Ms. Everson or anyone else as the acting Director of the NPS under the Federal Vacancies Reform Act. Ms. Everson does not otherwise qualify under that Act to serve as the acting Director. President Trump has not submitted any nominee for the Director position to the current U.S. Congress for the Senate's possible confirmation. To date, this is the first presidential term since the Park Service was created in 1917 in which it has had no actual Director.

9.      Several media articles and stakeholder announcements have referred to Ms. Everson as the acting or *de facto* Director of the NPS.


## CONSTITUTIONAL AND STATUTORY PROVISIONS

**United States Constitution.** Article II, Section 2 provides:

[The President] *…….. by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law.*


**Federal Vacancies Reform Act (FVRA).** The FVRA, 5 U.S.C. §§ 3345-3349d, provides the exclusive means by which a government employee may temporarily perform the functions and duties of a vacant position in an executive agency that requires Senate confirmation pursuant to "advice and consent" under Article II, Section 2 of the Constitution. FVRA limits a government employee's ability to serve as an acting officer in two primary ways. Section 3345(a) on "acting" officials provides that three classes of people may serve temporarily in an "advice and consent"

position. As a default rule, upon a vacancy occurring, the "first assistant" to a position automatically becomes the acting officer. Alternatively, the President may direct either a different senior official of that agency or a person serving in any other advice and consent position to serve as the acting officer. FVRA also limits the length of time a person may serve as acting officer, generally for up to 210 days, *Id.* § 3346.

FVRA forbids lower unconfirmed officials who are not properly "acting" under 5 U.S.C. §3345(a) from occupying offices that require Senate confirmation. It provides in §3348, subsections (b)(1) and (2), that in the absence of a confirmed or a properly-appointed acting official "the office shall remain vacant; and…only the head of such Executive agency may perform any function or duty of such office".

**Administrative Procedure Act (APA).** The APA, 5 U.S.C. § 701, *et seq.*, confers a right of judicial review on any person who is adversely affected by an "agency action". 5 U.S.C. § 702. Upon review, the court shall "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency actions, findings, and conclusions found to be– (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law". 5 U.S.C. § 706(2).

Under 5 U.S.C. § 551(13) "agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act". A "rule" is defined in § 551(4) as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the

approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing".

**NPS Organic Act.** The NPS Director position requires Senate confirmation under the NPS Organic Act, 54 U.S.C. § 100302(a)(1).

# BACKGROUND

The Constitution provides "the exclusive means" for appointing officers of the United States. *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018). Under Article II's Appointments Clause, officers must first be nominated by the President and then confirmed "by and with the Advice and Consent of the Senate." U.S. Const. Art. II, § 2, cl. 2. "The Senate's advice and consent power is a critical 'structural safeguard[] of the constitutional scheme.'" *SW Gen.*, 137 S. Ct. at 935 (quoting *Edmond v. United States*, 520 U.S. 651, 659 (1997)).

**A.      The Federal Vacancies Reform Act provides the only authority for acting officials to exercise the authority of a vacant office.**

Because the nomination and confirmation process required by the Appointments Clause can take time, Congress has granted the President "limited authority to appoint acting officials to temporarily perform the functions" of a vacant office that is otherwise subject to Senate confirmation. *SW Gen., Inc.*, 137 S. Ct. at 935. That authority has been granted by several different statutes over time; it is currently governed by the FVRA. *Id.*

**B.      The National Park Service Director wields broad federal power and must be appointed by the President and confirmed by the Senate.**

The office of the Director of the NPS is one that must be filled by the President, by and with the advice and consent of the Senate. NPS Organic Act, 54 U.S.C. § 100302(a)(1). As a result, the Appointments Clause and the FVRA govern the appointment of acting officers who discharge

the duties of that position. *See* 5 U.S.C. § 3345(a). This is at least in part because of the NPS Director's broad and crucial powers. The Park Service is responsible for protecting and preserving 85 million acres consisting of the beloved "crown jewels" of the public lands system, with a total of 420 separate Park System units occurring in every state. SSC ¶ 18.

## C.   The National Park Service has had no Director or FVRA-compliant Acting Director for almost four years.

Despite the importance of the position and the need for Senate confirmation, there has been no confirmed NPS Director for the entirety of President Trump's term in office. Instead, former Interior Secretary Zinke and then Secretary Bernhardt have chosen a series of lower-level appointees to run the agency. SUF ¶¶ 1-5. Prior to Ms. Everson the role was carried out by Deputy Directors P. Daniel Smith and David Vela under a series of "temporary" redelegation orders, then followed by a "succession order" that Mr. Vela signed on June 4, 2020, designating himself as the immediate successor to the non-existent Director of the NPS. *Id.* Each of the five redelegation orders signed by Interior Secretaries Zinke and Bernhardt claimed that its effect was only for a specified "temporary" duration, merely "intended to ensure uninterrupted management and execution of the duties of [the Director] during the Presidential transition pending Senate-confirmation of [a] new non-career official[.]" SUF, Orders at fns 2-5. However, President Trump has not submitted a nomination for a new NPS Director to the Senate during the current, almost-concluded, 116th U.S. Congress; nor has he appointed an "Acting Director" under FVRA. SUF ¶ 8. To date, this is the first presidential term since the Park Service was created in 1917 in which it has had no actual Director. *Id.*

### LEGAL STANDARD

A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## ARGUMENT

### I.   The Plaintiffs have standing.

As indicated in the Status of Proceedings, *supra,* just five days prior to the filing of the present Motion, on September 25th, Plaintiffs filed their detailed Opposition along with seven standing declarations opposing the Defendants' motion to dismiss for lack of standing. ECF No. 14 opposing ECF No. 13. Plaintiffs incorporate their standing arguments and showings with respect to Defendants Bernhardt and Everson in that filing herein by this reference.[3] In addition, they are re-submitting five of those standing declarations: Erik Molvar (WWP), Barbara Moritsch (WWP), Timothy Whitehouse (PEER), John Doe B (PEER), and the Declaration of Peter T. Jenkins in Support of Filing of John Doe Standing Declarations.[4]

To briefly summarize, the D.C. Circuit has instructed, "judicial review of an Appointments Clause claim will proceed even where any possible injury is radically attenuated". *Landry v. F.D.I.C.*, 204 F.3d 1125, 1131 (D.C. Cir. 2000). The Supreme Court has held that "a separation-

---

[3] Plaintiffs filed their Opposition a few hours before Judge Morris in Montana enjoined William Pendley from continuing in his role as acting Director of the BLM. Therefore, the extensive showing of Plaintiffs' standing with respect to their claims against Mr. Pendley can be disregarded for purposes of the present Motion, as those claims, for now, are considered moot; that situation may change.

[4] Plaintiffs have excluded the Standing Declarations of Richard Kroger (WWP and PEER) and John Doe A (PEER) filed with their Opposition on September 25th because both only address impacts on them related to the BLM. Thus, their standing showings are relevant only to claims against William Pendley.

of-powers violation may create a 'here-and-now' injury that can be remedied by a court". *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010). Plaintiffs provided extensive additional authority regarding the standing standards applicable to their FVRA and Appointments Clause challenges. ECF No. 14, at 5-6.

Plaintiffs have standing with respect to Defendants Barnhardt's and Everson's actions because their Opposition and standing declarations show: 1) under the "attenuated" injury requirements to maintain a suit claiming a violation of separation-of-powers, both WWP and PEER readily have both organizational and representational standing; 2) the preponderance of evidence shows that Plaintiffs' injuries-in-fact are fairly traceable to the Defendants' challenged actions; 3) and further, were the Court to grant the relief that Plaintiffs seek of preventing Margaret Everson from continuing to "exercise the authority of the Director" of the NPS based on the alleged illegal order under which she now is doing so, that would satisfactorily redress their injuries. *Id.*, at 4-15.[5] With respect to Ms. Everson's injurious actions see, in particular, the Whitehouse Declaration (¶¶ 8-10), Molvar Declaration (¶¶ 7-8), Moritsch Declaration (¶¶ 8-11), and the John Doe B Declaration (¶¶ 3-4).

Additionally, Plaintiffs' procedural injuries caused by the series of illegal appointments here are redressable under the "relaxed redressability requirement" that applies in procedural-rights cases. *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 185 (D.C. Cir. 2017) (quoting

---

[5] Note that the Montana plaintiffs withstood a standing challenge in the Pendley matter. *Bullock et al. v. U.S. BLM et al., supra,* note 1, Order, at 7-10. Also, organizational plaintiffs were found to have representational standing on behalf of their members in the recent Maryland FVRA case, *Casa de Maryland, Inc. v. Chad F. Wolf*, Case No. 8:20-cv-022118-PX, Opinion, at 27-37 (D. Md. Sept. 11, 2020) (enjoining enforcement of immigration rules changed by an unlawfully serving acting official).

12

*WildEarth Guardians v. Jewell*, 738 F.3d 298, 306 (D.C. Cir. 2013)). Under that standard, the Plaintiffs here "need not show that compliance with" the Appointments Clause or FVRA would alter the results of who was selected to serve in the NPS Director position or alter the outcomes of their decisions. *Id.* (quoting *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005)).

## II.   Margaret Everson's continued exercise of the Director's authority violates the Constitution's Appointments Clause.

Ms. Everson's continued exercise of the Director's authority is a straightforward violation of the Appointments Clause of the United States Constitution. "Any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by [the Appointments Clause]." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 881 (1991) (brackets and quotation marks omitted); *see also Lucia*, 138 S. Ct., at 2051 ("The Appointments Clause prescribes the exclusive means of appointing 'Officers.'"). This constitutional requirement is "more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997).

The office of the Director of the NPS is one that must be filled by the President by and with the advice and consent of the Senate. The NPS holds Everson out to the public, and internally within the agency, as exercising the authority of the Director in official communications and on its website. SUF ¶ 6. She has taken several major actions in her position including appointing a new Assistant Director, a new Associate Director, and a new Deputy Director. SUF ¶ 7. She has carried out numerous other activities as described in the Whitehouse, Molvar, Moritsch, and John Doe B declarations. Popular media portrays her as the acting or *de facto* Director. SUF ¶ 7. Given all this, she is an unlawful acting Director of the NPS under the Appointments Clause and FVRA.

**III.    The FVRA does not permit Everson's continued exercise of the NPS Director's authority.**

The FVRA does not permit Everson to remain indefinitely as acting Director of the NPS as allowed by her appointing order issued by Defendant Bernhardt. SUF ¶ 5. Rather, the FVRA contemplates circumstances—on a genuinely temporary basis—in which an acting official may "perform the functions and duties of any office of an Executive agency" for which Senate confirmation is required. *See* 5 U.S.C. § 3347(a). None of the contemplated circumstances are present here.

Not only does Everson's ongoing position as acting Director fail to comply with the FVRA, Defendant Bernhardt's long pattern of naming lower-level officials as the *de facto* NPS Directors also evades the clear design of the Constitution, spurning separation-of-powers principles and defying the purpose underlying the Appointments Clause. *See Freytag*, 501 U.S. at 878 ("Our separation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch. The Appointments Clause . . . guards against this encroachment.") (citation omitted).

The NPS's lack of any confirmed or FVRA-compliant Director has lasted since January 24, 2018, when P. Daniel Smith was appointed as "acting Director" by former Secretary of the Interior Ryan Zinke. SUF ¶ 1. This was a patently illegal appointment because FVRA is explicit that "only the President" had the power to appoint an acting NPS Director. 5 U.S.C. §3345(a)(2) and (3). Smith's improper appointment then was followed by a daisy chain of "temporary" authorizations from Secretary Bernhardt labeled as "redelegation orders" for Mr. Smith and then David Vela. SUF ¶¶ 2-3, fns 2-4. These orders were explicitly justified by Mr. Bernhardt's desire to fill the vacancy "during the Presidential transition pending Senate confirmation of [a] new [Director]". *Id.* But, that period of transition, by any sensible understanding, had come and gone

long ago; the President's term is nearly over. No nomination for the NPS Director has been forthcoming from the President during this Congress, thus the redelegations were not "pending Senate confirmation" of a Director as Bernhardt nonetheless claimed. As such, those redelegations were false, arbitrary, capricious, and unlawful; thus, they violated the APA, 5 U.S.C § 706(2). See SSC ¶¶ 1, 10-11, 34, 37-46.

On June 5, 2020, Secretary Bernhardt's last relegation order terminated. SUF ¶ 3, fn 4. But, one day earlier, June 4th, David Vela had used his improperly given authority to "exercise the authority of the Director" to purport to redelegate to himself the power to continue in that role via a "succession order". SUF ¶ 4. Attachment A. That maneuver likely was a response to the original complaint in this lawsuit filed on May 11, 2020. ECF No. 1. Messrs. Bernhardt and Vela likely recognized the absurdity of relying on redelegation orders that were justified by a long-past Presidential "transition" and by waiting for Senate confirmation of a Director when the President had submitted no nominee.

The June 4th Succession Order claimed that it was "pursuant to the Vacancies Reform Act". SUF ¶ 4. Attachment A, ¶ 1. Further, that Mr. Vela as Deputy Director could succeed to act in the Director's role. But, there is not one shred of legal support for that. The Director's position did not recently become vacant – it had been vacant for nearly four years. Mr. Vela could not by his fiat, relying on the prior illegal redelegation order by Bernhardt, contravene the specific requirements of FVRA and name his own position as the "First Assistant" to the NPS Director so as to "automatically succeed the Director of the NPS (Director) in the absence of the incumbent". SUF ¶ 4. Attachment A, ¶¶ 1-2. The FVRA's exclusive automatic succession criterion for a position that requires Senate confirmation is here, in 5 U.S.C. § 3345:

> **(a)** If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose

appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—

(**1**) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346.

For Mr. Vela to claim he could "automatically succeed the Director" position was nonsensical because when Vela did so no prior confirmed Director had "die[d], resign[ed], or [become] otherwise unable to perform the functions and duties of the office". The last confirmed Director was John Jarvis under President Barack Obama who left on January 4, 2017. SUF ¶ 8, fn 10 (link to NPS's list of past actual Directors). Clearly, no event happened on June 4 of 2020 that caused the Director position to become vacant and allowed Mr. Vela to succeed to Mr. Jarvis's former position in compliance with FVRA. A very similar so-called "succession" was held invalid in the recent FVRA case involving Kenneth Cuccinelli, who claimed to wear the mantle of "acting Director of U.S. Citizenship and Immigration Services," *L.M.-M. v. Kenneth T. Cuccinelli II*, 442 F. Supp. 3d 1 (D.D.C. 2020). Judge Randolph Moss found, "[t]here is no evidence that at any time prior to Cuccinelli's appointment did Congress or the Executive Branch imagine that an agency could create a new position after a vacancy arose; [and] could then alter the agency's order of succession to treat that new position as the 'first assistant' to the vacant office." *Id*., at 28. In short, the person who succeeds must have actually been the first assistant <u>when</u> the vacancy arose.

But then, once again, Defendant Bernhardt was pushed to change tack, likely by the Plaintiffs' First Supplemental Complaint in this lawsuit, which brought in a direct challenge to Vela's (previously secret) Succession Order. See Plaintiffs initial Motion for Leave to File a Supplemental Complaint, dated July 2, 2020, ECF No. 6, which this Court granted on July 7. ECF No. 7. Instead of the succession order approach, Bernhardt inexplicably went back to a delegation approach for Ms. Everson to be able to "exercise the authority of the Director". SUF ¶ 5. Making

16

her appointment more remarkable is that, unlike Smith and Vela before her, she does not even work in the NPS (nor has she ever); her title remains "Counselor to the Secretary". SUF ¶ 6.

In addition to violating FVRA -- and compelling Plaintiffs to chase their various maneuvers -- it is unconstitutional for the Secretary of the Interior and his appointees to string together a series of temporary orders that cumulatively last so long as to be effectively permanent during this presidency. Were it otherwise, the President could sidestep, for political expediency or any other reason, the Senate's constitutional role in the appointment process. He could effectively transform any office that requires Senate confirmation into one that does not. This would nullify the Appointments Clause. As this case illustrates, a President could do that even for the entirety of a presidential term, thereby allowing an entire Administration to bypass this vital safeguard. The Framers did not intend, and the Constitution does not permit, such a blatant end-run around the strictures of the Appointments Clause.

**IV.     Judge Morris' opinion in the comparable Pendley case is persuasive.**

The following portions of the Montana District Court opinion that ejected William Pendley from his position as *de facto* Acting Director of the BLM are equally persuasive as to the equally defective position that Margaret Everson now occupies. Substituting "NPS" in for "BLM" and "Everson" in for "Pendley" in these excerpts will lead this Court to the same conclusions:

> Federal Defendants argue that whether one "appreciate[s] the difference or not" Pendley "is not BLM's Acting Director, but rather the official performing the Director's duties under the Secretary's delegation." (Doc. 17 at 1). Under Federal Defendants' theory, a President could ignore their constitutional appointment responsibility indefinitely and instead delegate authority directly or through Cabinet Secretaries to unconfirmed appointed officials. Such an arrangement could last for an entire presidential administration. In fact, the case before the Court presents that scenario.

> Federal Defendants' argument attempting to distinguish an "Acting Director" from an "official performing the Director's duties under the Secretary's delegation" represents a distinction without a difference. Such arguments prove evasive and

undermine the constitutional system of checks and balances. Federal Defendants' theory flies in the face of the constitutional design, the clear text of the FVRA that provides the "exclusive" means for temporary appointment, and the history of Executive Branch evasion of the Appointments Clause that led Congress to pass the FVRA in the first place.

This case does not present the only recent improper exercise of acting authority in the Executive Branch. *See, e.g.*, *Casa de Maryland, Inc. v. Chad F. Wolf*, Case No. 8:20-cv-022118-PX (D. Md. Sept. 11, 2020) (invalidating the appointment of Acting Secretary of Homeland Security Chad F. Wolf under the FVRA); *L.M.-M. v. Kenneth T. Cuccinelli II*, Case No. 1:19-cv-02676-RDM (D.D.C. Mar. 1, 2020) (invalidating the appointment of Acting Director of the United States Citizenship and Immigration Services Kenneth Cuccinelli II under the FVRA). This case does present, however, a unique method to evade proper FVRA acting appointment procedures. The President cannot shelter unconstitutional "temporary" appointments for the duration of his presidency through a matryoshka doll of delegated authorities.

*Bullock et al. v. U.S. BLM et al.,* Case No. 4:20-cv-00062-BMM (D. Mont. Sept. 25, 2020),

Order, at 21-22. Judge Morris went on to conclude:

The Appointments Clause "is not an empty formality." *N.L.R.B. v. SW General, Inc.*, ___ U.S. at ___, 137 S. Ct. at 948. Presidents cannot avoid their constitutional obligation to appoint Officers on advice and consent of the Senate by making "temporary" delegations with evasive titles and delegations. Pendley's past and continued service trivializes the import of the FVRA and the Appointments Clause. Presidents possess significant authority over the Executive Departments, but even where the President has broad discretion, "that discretion is not boundless" and "may not transgress constitutional limitations." *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986). It remains "the duty of the courts, in cases properly before them, to say where th[e] . . . constitutional boundaries lie." *Id.* "At some point, courts can and must play a role in policing 'acting' appointments that are effectively permanent." *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 153 (D.D.C. 2019), *aff'd on other grounds*, 920 F.3d 1, 12 (D.C. Cir. 2019) (per curiam).

Congress established the BLM Director as an office that must be filled "by the President, by and with the advice and consent of the Senate." 43 U.S.C. § 1731(a). The agency's statute provides no independent means to temporarily fill the role. *See, e.g.*, *Hooks v. Kitsap Tenant Support Servs*., 816 F.3d 550, 556 (9th Cir. 2016); *Guedes*, 356 F. Supp. 3d at 143 ("Agency-specific statutes like the AG Act were expected to operate alongside the FVRA, not to displace it"), *aff'd on other grounds*, 920 F.3d 1, 12 (D.C. Cir. 2019) (per curiam). As a result, the designation of an Acting BLM Director remains subject to the exclusive methods for temporary appointment set out in the FVRA. *See* 5 U.S.C. § 3347. A delegation that does not

18

follow those procedures would violate both the FVRA and the Appointments Clause of the U.S. Constitution.

/////////////////////////

The Executive's delegation arrangement threatens "a gradual concentration of the several powers in the same department." The Federalist No. 51 (J. Madison). It does not take "careful and perceptive analysis" to understand such a threat because "this wolf comes as a wolf." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

Order, at 28-30. This Court can readily concur with Judge Morris's thorough analysis and apply it here as well.

## V.     Expedited review is appropriate because of the nature of the constitutional violation and the ongoing harm that it causes.

The Plaintiffs respectfully request that this Court expedite review of this Motion. Expedited review is appropriate for several reasons. *First*, it is necessary to vindicate the critical role that the Appointments Clause and the FVRA play in the constitutional separation of powers. If the President could evade judicial review—by running out the clock through a series of temporary maneuvers whose legality would then become tied up in litigation until the end of his term—it would reduce the Appointments Clause to a triviality. And it would defeat the very purpose of the FVRA. For these reasons, it is not uncommon for courts to grant expedited briefing in Appointments Clause challenges, and this Court should do the same here. *See, e.g.*, *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019).

*Second*, the motion raises a discrete, purely legal question that does not require extensive briefing to resolve. *Third*, as documented above and in the standing declarations herewith, Ms. Everson's continued functioning as acting Director—and the uncertain status of the actions taken by the NPS under her unlawful leadership—is causing PEER and WWP ongoing harm.

**CONCLUSION**

Plaintiffs are entitled to partial summary judgment as matter of law. The Court should grant their Motion and declare Margaret Everson's continued functioning as acting Director of the NPS to be unconstitutional and in violation of FVRA and the APA. It should enjoin her from taking any further action in that unlawful role. The Court also should enjoin Secretary of the Interior David Bernhardt from unlawfully delegating the authority of the NPS Director. A proposed order is attached.

Because of the ongoing nature of the harm and the particularly egregious nature of the constitutional violation, the Plaintiffs request expedited review of this Motion.

Dated: September 30, 2020

Respectfully submitted,

_____

Peter T. Jenkins
D.C. Bar No. 477229
Paula Dinerstein
D.C. Bar No. 333971
Public Employees for Environmental Responsibility
962 Wayne Ave., Suite 610
Silver Spring, MD 20910
202.265.4189 (tel.)
pjenkins@peer.org
pdinerstein@peer.org